case number 24-1764 Schaumburg v. Schaumburg Firefighters' Pension. Okay, I'm Justice Michael B. Hyman and with me is Justice Carl A. Walker and Justice Celia Gamrath. We will conduct this as if we were in a courtroom. Each side has 20 minutes. The appellant can reserve whatever time they want for rebuttal. We probably will interrupt you to ask our questions. The questions are important. Now, I see three faces. Are the three people arguing? Yes, your honor. Yvette Heinzelman for the appellant. Scott Moran for Mr. Reed, the appellee. And Thomas Raja on behalf of the Schaumburg Firefighters' Pension Fund. Okay, so between Mr. Reed and the Firefighters' Pension Fund, you're going to split your time or how are you going to do it? I think that makes sense, Judge. I agree, your honor. Okay, is one of you want to go first? Mr. Raja can go first. Okay, and how much time do you each want to reserve? I won't need to reserve any time. No, for the appellant. I would like to reserve five minutes. Okay. Okay, Mr. Raja, proceed. You want the appellant to proceed first? Okay. I apologize. No problem. Go ahead. Good afternoon. My name is Yvette Heinzelman. I am here on behalf of the village of Schaumburg, the plaintiff, and the appellant. I've reserved five minutes for purposes of rebuttal. Sorry, I want to make sure I time myself. The plaintiff appellant has identified two issues on appeal. The first is that the pension board's jurisdiction over Mr. Reed is void after it awarded Mr. Reed a retirement pension. The decision that exceeds the scope of an agency's authority is void and can be challenged at any time under the decision in pro-tech. Intellingly, with respect to the pension board's dispute on that issue, if you note that on C-376, when I raised the issue of jurisdiction before the pension board, it indicated that it had no longer a jurisdiction over the issue because it had issued a final decision on the line of duty disability pension, if that argument is accurate. But you knew about the disability did you? I did. I was in the court. So you didn't appeal? I didn't. You knew it was there. It went forward. It seems that there's no basis for you to say that that case shouldn't have proceeded when since it was already pending. And did you, as I understand, I don't think you brought up when you went to reconsideration, you went back to the board, there was no objection there. There was. I did file an objection. I raised an objection at the argument when the board issued its decision. I know that. I know that. They said they had no jurisdiction. Jurisdiction over that argument. However, at the time I raised the issue, he told me the issue, Mr. Raja told me the issue was impending before the board that I should file whatever motion I felt appropriate in order to do so. That's irrelevant. So if you're asking me whether or not we should have opposed the appeal once the retirement benefit was... The judge, in this case, sent it back for reconsideration. Correct. And you proceeded with the reconsideration, correct? Correct. So you waived your argument. Well, it's my position that jurisdiction can't be waived, that once the board issued a retirement pension, that any subsequent decisions would be void under the PROTEC decision. And therefore, it is irrelevant when I raised that issue. They have a right to go to the circuit court, which is what happened. Well, are you suggesting that it's due process? Is that why you're saying they have a right? I'm just saying they have a right to go to the circuit court. In the circuit court, there's a procedure. And the circuit court went through that procedure, sent it back down, made a decision in writing, sent it back down, various things happened. There was a new hearing before the board, the pension board. That all proceeded, and you went forward with all that. And now you're saying, well, I didn't say anything, but this is all a waste of time. It's a when there's a procedure in place that allows them to do exactly what they did. The judge had no right to hear their petition before the circuit court? No, that's not what I'm saying. What I'm saying is that if they wanted to appeal, he should not have proceeded with his request for a retirement pension. In these proceedings, generally, when a applicant files a line of duty, or I'm sorry, files a disability pension, they file a non-duty and a duty. In this case, Mr. Reed filed just a line of duty. Mr. Raja recognized that error and asked Mr. Reed whether or not he wanted to proceed with both a line of duty and a non-duty because if the duty was denied, he could still move forward on a non-duty and appeal in the interim and get the interim benefits and dispute the issuance, the causation issue between a line of duty and a non-duty. Mr. Reed, through his counsel, said no and made a specific calculated decision to seek a retirement pension as opposed to a non-duty disability pension. That decision is significant and strategic. And Mr. Duda, who was representing Mr. Reed at the time, is very well learned and educated with respect to this pension proceeding. This is not the same case as the Northbrook case. This is not a interim non-duty disability pension. There's a difference in the pension code between a line of duty disability pension, a non-duty disability pension, and a retirement pension. And the retirement pension, once issued, divests the pension board with jurisdiction. And that occurred, I believe, in January. It's 22. So let me understand this. Is there something specific in the pension code that allows for an interim non-duty disability pension? So say that Mr. Duda did assert as an alternative a non-duty and then appeals it and says it should have been duty. We get those appeals all the time. We see them. And then they get converted at that point. But the issue has not come up in front of me as to whether the pension code allows for that and says in the interim you could have this backup. So I want to know, is there something in the pension code that allows an applicant to get that interim non-duty where you would not divest the board of its jurisdiction compared to what you're saying? You're saying if you don't get the non-duty and you go straight to retirement, then it's over for you. You can't appeal the denial of a... Yes. Two things I would point to. Number one is, and I understand it's a Rule 23 decision, but there have been several decisions that have allowed interim non-duty disability pensions. And generally speaking, during the proceedings, it is identified as an interim non-duty award pending the completion of the pension board proceedings and or an appeal process. And the case that's most recent about that is, I call it the Martin case because that's how I remember it, but it's the village of Northbrook. It's a Rule 23 decision that I believe we cited in one of our replies. And I can give you that citation if you'd like. No. So I know that there's a case law on it. Is there a statutory section that allows for it or did it come through case law? So in other words, you're saying we can't allow it by case law because there's nothing in the pension code. Is there something in the pension code that Martin has relied on? So there's nothing in the pension code that that Martin has relied on. However, if you look at 40 ILC 54-110 line of duty disability pension, it talks about whether or not an individual that qualifies for a line of duty disability pension can either get the 65% line of duty or a retirement pension. It's an or. It's not an and or. It's an or. And I think between that section of the pension code, as well as the Illinois Department of Insurance decision that we cited in our briefs that indicated that there was no ability to award an interim retirement pension and there is statutory authority for the Illinois Department of Insurance to issue those advisory opinions. I think on that basis, the decision is once a retirement pension is issued. So getting back to Justice Hyman's question, you knew all this, right? So just like Mr. Duda has experienced, you're very experienced in this. At that moment in time, once the retirement pension gets determined, why don't you come in and file a motion to dismiss and say you're done? You can't even seek a line of duty anymore. Why wait? It's almost like you wanted to hedge your bets here or something. That was not the case. I can't tell you. I don't have a justification for you. I can say that we did not do that. And I didn't raise it until that hearing where the pension board reversed itself. And so I'm clear here. So he originally did receive the retirement pension, which is 75%, correct? Correct. And the line of duty disability, as you say, is 65%, but it's not taxable, is that? Correct. This is a tax issue, frankly, in my opinion. That's why I was going with it. And so what we have here, though, is that he was originally awarded that 75% retirement pension. And now, based upon the remand from the circuit court, the board has now awarded him the line of duty 65% pension. Is that correct? That's correct. And so really, what we really have going on here, though, is whether or not, I think the question is whether or not the board had a, because what the board has done is it's changed its decision. And it's my understanding that there was no new evidence, correct? There was no new evidence, correct? Correct. There is no new evidence. In my opinion of Dr. Horowitz's supplemental decisions that he still said, it's not a noise notch, it's not noise induced hearing, not noise induced hearing loss. So there was no change in the evidence. That is absolutely correct. And so this may be more of a question for the other side, but I want to ask you, what changes for the board, if they're dealing with the exact same facts, and they've already ruled that he was not entitled to the line of duty disability pension, what has changed? In my opinion, nothing. I was somewhat stunned when they reversed themselves and went from a no pension, right, because he was denied the line of duty, and they granted him the line of duty pension. I think even his counsel, if you read the record at that hearing, Mr. Duda was surprised because there was no change in the record. I think that the pension board was trying to appease the circuit court's remand order. I think that if you look at their first decision, they address cumulative acts in the workplace. And this case, and I want to mention, this case is very different from some others. This is not where we're speculating. The village of Schaumburg had a 1999 report indicating that the noise levels and exposure levels did not meet the OSHA standards, did not affect the people in those fire departments where Mr. Reed worked. We did that again. There's different reports, and there's disagreement about that, and the board is allowed to weigh the experts' reports, right? But you say that there were other reports, some that were above OSHA, some were below, you know, and still the issue is not OSHA, is it? It's whether Mr. Reed had a hearing loss, and just the OSHA level has nothing to do with whether or not, that is not the end all be all. So if the noise is not loud enough to cause a hearing loss in the workplaces where he was at, that means there can't be cumulative acts because he's not exposed to enough. That's not what the experts say. I mean, some of the experts, they don't all agree. If he's on the fire truck, and he's right near where the noise is coming out, that's different. And of course, the trucks that were, you know, there's all these disputes about the experts and what they did. But to me, the issue is to go back that it, that when the fact that the case, they can't have it both ways, right? They have to decide whether they will have the disability or the retirement. And then they, if they take the disability, they have to maybe pay back some money. I don't know. I mean, right? I mean, they can't have both, right? I think they either have to pick a track. If you're disabled, it's, you're disabled. If you're retired, that means you're not disabled. That means that you're just no longer actively employed. But that's what the, you read the rule and it said, or, so they have to pick a track. So that, that was where I was going is it was, or they have to pick a track. So now we know that it's an or they have to pick a track. And we know that you, you, you, as we said, there was no objection to going back to the board. And this is all something after the fact. And they're really, what you're saying is there is no rule or statute that allows for this procedure. There is no rule or statute where you can go independently for both. Correct. You have to pick one or the other. And I think that was put before Mr. Reid's choice. And he, then he choose the retirement knowing that this would eliminate or should eliminate. But why couldn't he make a choice since it was remanded? I mean, if he had lost, that would have been the end of it, right? If the circuit court had agreed with you, the case would have been over, right? The case would have been over. That's right. But she did. So it went back down and you allow that process to go forward because it's normal procedure and the judges have the right to do that. So then the board looked in light of some of the issues that were raised by the court at the evidence. And so aren't you just really arguing to us? It's a question of weighing and you liked the way the board weighed it the time rather than in 2023. I think that the reversal is, I do not believe the first decision. If you look at the 2020 decision and how thoroughly reasoned it is, and it's far more detailed than the second. I don't believe that it's against the man. Their decision was not against the manifest way to the evidence. And therefore that is the one that should be upheld. That is my position. But can we look at the 2020 decision? Aren't we looking at the 2023 decision and whether the 2023 decision, because the 2020 decision has gone by the wayside. There's a new decision. What's before us is 2023. And you're saying, well, you can't look at the 2023. That's your position. But if we can look at the 2023, then the 2020 doesn't really come into play. Well, if you look at the 2023 decision, then I think you've got to look at specifically the issues with respect to the expert witnesses. And I have gone over my time. I don't want to use my, okay. We've been interrupting you. So we want to hear your argument. So if you, if you, I don't, I don't agree that it's just the 2023 decision because I believe there was an error that occurred with respect to reversing the 2020 decision. However, if you look, if you're looking at the 2023 decision, you have to take into consideration the fact that when Mr. Reed testified, he didn't, he, his numbers of calls and his information with respect to his workplace was pure estimation that C801 transcript 101 lines five through 16. He does not know what the difference in decimal levels are. C805, 115, 12 through 22. Our 1999 audiological study indicated that there was not enough noise and exposure. But that's the way into the evidence by the board. But, but the, but the 2023 decision didn't even consider the 1999 audiological report, which is an existence. I mean, how can you dispute the fact that, I mean, you can't just disregard it because it doesn't fit the narrative and that's what was done. I mean, it's, it, that is even stepping outside of the litigation that was done in response to a request by the union to make sure they were not being harmed. And what we did was ensure that they weren't being harmed. And there is not one shred of evidence that the, either the equipment were changed or that the noise levels got higher between 99 and 2017. When we did our second report that found the same conclusion. So we have two of the same conclusions. Are there any other questions at this time? Okay. You'll have your five minutes. Thank you, Mr. Moran or no, Mr. Rogers. Thank you, your honors. May it please the court councils. I represent the Schomburg Firefighters Pension Fund. As you know, I just want to address a couple of clarification issues with respect to opposing counsel's argument. Justice Walker brought up the difference between the retirement pension and the duty disability pension. They're theoretically the same as far as the amount of the benefit with the pension code indicates that a firefighter be entitled to a disability pension or the equivalent retirement pension. If he, if he has those extensive years where the firefighter did in this case, he had over 31 years to qualify him for a 75% pension. So really the only difference with respect to the benefit that the firefighter would receive is with retirement, you get cost of living increases. Once you reach age 55, as opposed to a disability, you get an increase at age 60 and the taxability of the benefit where retirement benefit is taxable. A duty disability pension is non-taxable. So from the pension board's perspective, other than a cost of living increase, we pay out the same amount of money to the firefighter, whether he receives a line of duty or a retirement pension. So I just wanted to make that clarification. Secondly, to clarify justice Walker's question, as far as what changed between the first decision and the second decision of the fund, there was a number of changes. First, we had a 17 page decision by the circuit court where the, all the evidence was, was analyzed pretty thoroughly and the court reversed the decision of the board indicating that we didn't it through the proper lens of the cumulative effects of acts of duty, as opposed to the, most of the argument and factual support in the first decision did focus on whether or not the firefighter pointed out specific acts of duty where he had been exposed to noises, as opposed to looking at the evidence more generally and considering the fact that his 30 some years on the job and his testimony, whereas he indicated he had many exposures while responding to calls between five and eight minutes that he was on a fire truck that had open, open dog houses where he would sit close to the sirens and the horns while he was on those runs. And significantly, none of the experts that analyze the equipment used or the trucks, first of all, they didn't analyze the equipment that he actually used, whether you go back to 1999, 2009, or the 1995, I'm sorry, or the 2017 study. None of those looked at the, his actual call runs and his exposure that he would have experienced on those runs. They may have analyzed some of the equipment in the different firehouses, but they didn't look at the actual equipment he utilized first and foremost. And secondly, even if they did, they didn't go to and analyze him on an actual run or take another firefighter on an actual run and actually measure those decibels when they're in a fire truck. So the new evidence was not only looking at it through a different prism of the cumulative effects of acts of duty. The board did send the entire record from the first proceeding along with the decision of the circuit court back to Dr. Horowitz, who was the outlying opinion that the board had relied upon on the first time. He had an opinion different from the other two experts that the pension board had hired. The board sent all that information back to Dr. Horowitz. And the second time around in the supplemental opinion, Dr. Horowitz's opinion was somewhat inconsistent and contradictory to his deposition testimony. He had now for the first time indicated, well, the testing can be suggestive of noise-induced hearing loss. And when you look at his testimony at deposition, he had admitted that noise-induced hearing loss can be masked by other causes, including additional noise exposure. So when you compare that and look at the totalities of the doctors on the second time around, Dr. Horowitz isn't as expressly against or expressly denying that there could be some noise-induced causative factor with respect to the disability. So the second time around, there certainly was that new evidence in addition to looking at through a different prism. And as well, there was two new pension board trustees. We had a different makeup of the board the second time around. Two new trustees had come on the board in the interim from the first decision to the second decision. They were given the entire record from the first proceedings, as well as now the additional testimony of Dr. Horowitz in considering this decision. That brings me again to another point that the justices raised is why didn't the village take any action to appeal this? The board had at least two hearings when it came back on remand before the board. The village never mentioned any objection to the fact that the board had in the interim awarded a retirement pension. They allowed the entire remand proceedings to go on, which took many months. That allowed the entire appeal of it once we had granted the retirement to proceed in the circuit court, never filing any motion in the circuit court. So we think they certainly waived that. Well, but they're saying they didn't waive it because they can bring it up at any time because it goes to jurisdiction. What's your response to whether there's any kind of something in the code that allows for this? What would allow somebody to take this kind of tray? Apparently, we're hearing that this is unique, that this is not normal operating procedure. That's correct, Jess. I've been doing this quite a long time. I think it's the first time I've come across this particular issue where the board had denied the line of duty disability benefit. And because during the proceedings where it was denied, I had asked counsel for the firefighter, do you want the board to consider a non-duty? He had first said yes, then filed a motion with the board saying, if anything, we want you to consider a retirement pension and non-prejudicial to any appeal rights. And he withdrew any request for the line of duty or the non-duty. Once we proceeded with the entire proceeding and the board actually denied the benefit, the board unilaterally then went ahead and granted retirement. It wasn't through any urging by the applicant. And really, we felt that was our fiduciary responsibility as a board to not have a 31-year veteran firefighter go without any type of pay when he qualified for the retirement benefit at the same time. And pursuant, which I cite in my brief, section 4-109, that talks about a firefighter who is not entitled to receive a disability pension shall be entitled to receive a monthly pension based on his salary attached to his rank. So given his age, though, there will be no difference in the, counsel mentioned the three types of pension. You have the retirement pension, you have the disability pension, and you have the duty disability pension. Do you agree that all three of those, but in this case, they're all the same. The only difference is the tax is correct. So the only caveat to that, Justice, I think you're correct, except the non-duty may, that's pretty specific in the statute that you're required to only 50% of your pension. That's why we had asked, we wanted an interim decision so that there would be some income coming into the firefighter, which he certainly qualified based on the doctor's report that he was disabled. So that's why I asked, we wanted the non-duty counsel for the firefighter want to prejudice his client's case by admitting or accepting that form of pension when he felt that the very least he'd be entitled to a retirement pension, if not the line of duty. Let me ask you, do you have situations where somebody retires and then they go out of retirement and they're already in pay status, then they say, oh, I want to come back. I don't want to be retired. Does that happen? And then the board stops the payment? Yes, Justice. There is a separate provision in the pension code that allows for re-entry of firefighters. And in that case, the board would suspend any retirement pension while they're in active service as a firefighter. And so in effect, is that what would happen here? He'd get his retirement and then the retirement period would be suspended to be replaced by this line of duty pension. So I think I understand your question. In this case, it's a different scenario because the firefighter is not looking to re-enter active service. Here, the proceedings before the board had completed in their entirety, we denied a line of duty disability. At that point, the applicant or the plaintiff or the firefighter certainly had an appeal right and a due process right to appeal that decision to the circuit court, which is in the pension code administrative review. So there was really nothing pending before the board once we denied that disability. So we certainly could, at least in my opinion and the pension board's opinion, honor his request and that we consider a retirement pension at that point. There was something in writing because you said that the board did this unilaterally, not at the urging of Mr. Reid. So tell me about that because is this something that the board is going to get into the habit now of just unilaterally issuing a retirement pension, even if somebody says, wait, I'm not ready for it? So no, Justice. Normally, we have a request from the applicant. That's what we had here, as well. The request just came earlier on in the proceedings where he said, no, I don't want you to consider a non-duty disability. I want you to consider a retirement in the alternative or non-prejudicial to my appeal rights. So we interpreted that if the board denied the claim at the end of the proceedings, he did want a retirement pension. But we certainly wouldn't grant anyone a unilateral pension, not during the pending proceedings. The normal procedure would be wait for a request from the applicant. We feel that we had that request based on him making that during the actual proceedings for the disability claim. Okay. So as I see it, with this precedent being set, you're going to have a multitude of firefighters coming in. Instead of the typical, give me a line of duty or a non-duty, you're going to have everybody saying it's line of duty, and my backup is retirement, because then I get 75. If I went on appeal, great, I could revert it back to duty, but I never have to accept just that 50% non-duty pension. That's what's going to happen. That's the effect of what the board did and what the board is saying is correct. So, Justice, I don't see the scenario that... These cases are pretty routine. Normally, it's a... Rarely do we have a guy that has already qualified for retirement coming in to seek a disability. It's very unique, but it does happen on occasion. So I don't think we'd see a flood of people doing, but if it is normal practice, in most cases for a firefighter who has not yet reached the age of and non-prejudicial. That always happens in almost every case. So it's not unique. Can you point us in the statute where the statute allows for that backup? Because to your point, I see that all the time. Duty or alternatively non-duty pension. Could you remind us in the statute where it allows for you to elect either or? Because Ms. Heitzelman is saying you have to track. It's either duty, non-duty, or it's duty or retirement. That's a separate track and you can't get both. So where is that nuance in the statute? I don't agree with Ms. Heitzelman. That 110 is the... And I'll be all... I think that 110 talks about people who were entitled to line of pension, line of duty, and you get the greater of 65 percent or retirement pension. So Ms. Heitzelman, think of a different statute that you can point to because I don't think that's going to do it for us. So Mr. Rothschild, where in this statute does it give you this instruction to go on one track or the other? So I don't think there's an instruction to go on one track or another. I think that that's a myth that's kind of come up throughout this argument. I think what statute does allow for is a number of different benefits that a firefighter may be entitled to. Duty, non-duty, occupational, and a retirement. Those are all separate provisions in the code that give those benefits. Where the board... And I've actually argued the Northbrook case against Ms. Heitzelman in that matter. And where the ability to grant an interim decision has come from is the board under the pension code provision 4-117.2 says the board has the exclusive power to control and manage the fund for purposes of pensioning disabled and retired firefighters. You can also look to section 4-123.3 where it says the board has the authority to hear and decide all applications for pensions and other benefits. And then you have in these other cases that have interim benefits, there is a... In the Northbrook case, there was a Department of Insurance opinion where they're the regulators of the fund. There they said that because if a firefighter has those three experts that the pension board has sent him to, and there is that sufficient evidence in the record that the board could grant an interim non-duty while the line of duty disability is pending. They have also indicated in the Northbrook case that you cannot grant an interim retirement pension. The board didn't do that here. We didn't grant the retirement pension until the proceedings before it were done. There was no interim award issued by the board and primarily because of that IDOI opinion, the board didn't want to risk having that come up in an audit or going against the Illinois Department of Insurance. But in the cases that have analyzed an interim decision, they found that the authority of the board to conduct its hearings, that it does have that ability to do it. It's a non-final, it's an interlocutory order, which is always subject to appeal by either the firefighter or any intervening party like the village here. So when you say interim, is the interim during the proceeding before the hearing in the final decision? Because I've viewed non-duty interim during that period of time where the board says, no, you don't qualify for duty, we're giving you a non-duty, comes up through administrative review. If it gets reversed, then you get it made up by a duty. Is that the interim period or are you talking interim just while you're waiting for the board to decide? Which didn't happen here. This person was going bare with no income coming in. So could you explain that? Sure. Yeah. So I am not talking about it after the board decides the case and when it's on administrative review. Interim is only while the board is still in its proceedings, while the administrative hearings are going on before the board, where it can grant that lesser benefit of a non-duty disability at 50%, assuming that the board has sufficient evidence with respect to its three experts to grant that interim decision. That would be the only time a board would do that. And generally, we ask the applicant and any intervening party if there's an objection to that or if they'd like us to do that. And then that's always subject to appeal. So if for whatever reason, at the end of the line of duty claim, the board found that the interim non-duty was the appropriate, we'd then make that permanent, which then could be appealed by the applicant appearing before the board. Hope that answers your question, Justice. And here, Mr. Reed didn't appeal the retirement. So he got the retirement. He appealed the duty. And usually these go hand in hand, right? So you get your non-duty and you go up to administrative review and it's both on appeal. Here, he accepted the benefit of the retirement, didn't appeal that. Nobody appealed that. That's saying, you gave me the non-duty. I want the line of duty. So the reversal is together. Here, it's unique because we've got this retirement final decision that he's entitled to. And now, if we say that the court was right in affirming the board and says there is a entitlement to a you know, you guys could make some agreement to, you know, strip it or do some compensation or do some chewing up. But Mr. Reed has a decision from you saying here's your retirement. Here you go. And now you have a circuit court decision saying, here you go. You get your duty. This is where 110 probably kicks in and you get the greater of the two. There's going to be a lot of true enough to do, I would think, tax-wise at least. So Justice, to answer, I think this is where section 4-109 comes in where the pension code says if you're not entitled to a disability, you would get a retirement. And that's what the board did here. We found he wasn't entitled to a disability, gave him a retirement. I think the circuit court judge was astute in pointing out that, you know, if the board's unilaterally granting of a retirement would usurp the firefighter's appeal rights on administrative review, we would essentially be violating his due process. Any time an applicant came before us and wanted to appeal our denial of a benefit, we could just quickly grant them a retirement and then he can't even appeal our decision. I think that would be in violation of his due process. So really what you had here is once circuit court remanded it back to us and then it went back up to the circuit court after our remand order, we basically have, we now have a court telling us, yes, your decision granting him a duty disability was correct. Therefore, he's kind of entitled to both, but he can't get both at the same time. So what the board did here is once we granted him the line of duty, we corrected the retirement pension, shored up any monies that he was provided on a cost of living. And really, if this court affirms this decision here, nothing is going to change as far as the firefighter's concerned. We've already corrected to provide him a line of duty and have scaled back the cost of living adjustments at this time. So as far as I'm concerned, the board's concerned it wouldn't affect anything from him. I know I've gone well over my time. I know that you're kind of in a different position on the case than councils, but the real issue here is right now for us is whether or not the decision of the board, the current decision of the board, the 2023 decision was against the manifest way to the evidence. Are you prepared to argue that at all? Yes, judge, we think it's not against the manifest way and I'll be brief just to reserve some time for Mr. Moran. We think that when looking at it from the cumulative effects of acts of duty, there was more than ample competent evidence in the record to support the board's decision. And that's really the standard here on against the manifest weight. Firefighter Reed testified extensively about his exposures on the Seagraves firetruck engine. He testified about his exposures to the sirens and the horns and that he'd go on runs. I think it was estimated to be about 500 calls a year, at least that's what he provided to one of the physicians. Um, and that his, and then he had those exposures from 1985, at least through 1999 and through 2006 when he was first diagnosed with a hearing problem, his testimonies at C7 83 of the record. He also testified about the power tools he was exposed to during his 31 year career. And most importantly, three of the four medical experts that the board relied upon, uh, in the 2023 hearing all agreed that firefighter Reed was exposed to noise during his work as a firefighter and that the noise was at least a causative, uh, factor in his disability. So majority of the, of the experts that were before the board, three out of four indicated that, that it certainly was a causative factor. Uh, and we found that that was, that met the applicant's burden by beyond a preponderance of the evidence. And as I mentioned, Dr. Horowitz, the outlying physician, when you look at his testimony versus his supplemental report, it's a bit confusing, possibly contradictory, and that he does indicate noise induced hearing loss. Um, can it, that the notch at the 400 frequency level could be suggestive of hearing loss, uh, and that it could be masked by other noises and other conditions as, as being in the 10 to 12 year range as a firefighter continues to work. So again, looking at that in its totality, the board had more than competent evidence in record to support granting a duty related disability. Thank you. Uh, Mr. Moran, I'm, I'm going to give you, do you need any time? Uh, is there something you want to say to add? Otherwise I'll give you three or four minutes because you're here, but, uh, you have something to add. I'll just be brief, your honor, and I appreciate the time. Thank you for the justices for your time today. I think that the timing of this is critical in that Mr. Reed did not seek the retirement benefits until after the pension board had denied the line of duty disability. Mr. Duda during the pendency of the arguments had asked them to consider that on a, on a, uh, on a basis, on a temporary basis so that he would have some income should the board deny the line of duty disability benefits. And the village is asking to take a very strict reading of the act and that, and to answer justice, uh, Gamera's question. No, there's not anything in the statute that says an interim decision of a non-line of duty is appropriate. You've asked that a couple of times and that's not in the statute, but also not in the statute is the ability for villages to intervene yet out of a case out of Stickney under the general powers and administration of the fund courts have held that there is a process that can be done that allows intervention. And what the board did here is they looked at this and said, we're denying the non-due we're denying the line of duty, but you have earned this retirement benefit. And we're going to give this to you as an interim while we fight this out. So they just didn't want their person to go without any income for this extreme period of time. So the only way the jurisdictional argument of the village survives is if the court finds that that decision was void. So the board grants in October of 2022, the board denies the, um, I'm sorry, October of 19, the board denies the line of duty in January of 2020, they give the retirement benefit. And from that point forward, the village raises no issue with that. Not before the first appearance with judge Loftus, when she remands it back, not during any of the hearings during the next year in front of the pension board. It was only after the board voted to grant the line of duty where the village goes, Hey, isn't he getting a retirement benefit? It wasn't an objection. She asked a question. And then after the board had concluded and resolved the matter, then she filed a motion to reconsider. So I think that timing is kind of critical. Those were a few of the important questions that I heard. Justice Gamrath asked, was there ever anybody who had left on a line of duty and then sought to come back? And the answer is there's no appellate decision on that, but there was a Cook County circuit court decision that allowed that to happen. Just to answer that question. I think I've exceeded my time. I just have one question for you. Kind of follow up to Justice Gamrath. If we affirm, is what, if anything, does that affect the law? I mean, is this decision actually going to create anything new or not? I don't think it's going to, your honor. The village has relied on this Northbrook decision that you can't, and this opinion from the department of insurance, but that opinion, if you read it at the bottom, it was based on those specific facts. And it says, if there were other facts, then that opinion would change. And there are different facts here. I think the board, once it made its decision, has the right to say, oh, you've earned this other benefit. You've been here 31 years. We can allow this to go. You're entitled to this. And here you go. It wasn't as if Mr. Reed filed for his retirement and then doubled down and came back and said, oh, now I'm going to try for this over here. He followed the process. He stayed on single track and he simply was paid a benefit that he was entitled to through his years of service. Okay. Thank you. Any other questions? Yes. Could I ask Mr. Rocha a question about this insurance decision, this advisory opinion? We have a concept in the law that the agency that's charged with enforcement and administration of a code, we give deference to their interpretation. This advisory opinion is from long ago on a different case. But what are we supposed to do with that? It specifically says there is no provision in the code for an interim retirement pension. I think I'm hearing you say, Judge, this wasn't an interim. The difference in Northbrook is that the pension application was still pending. Here it wasn't. We had a final decision. Is that the distinction? Yes, Judge. That is the distinction here because in Northbrook it was very specific. Can we give him an interim retirement pension while we adjudicate the line of duty claim that's before us? And there the court said, well, you can't do it because you would be converting essentially a disability into a retirement and there's no provision there. We have a more lucrative benefit that was awarded by the court on reversal. We have a court order on remand and then a court order affirming the decision of the board, at least from the circuit court at this point. So we're abiding by the court and what the judiciary said we have to do. We didn't have that in Northbrook. This was while it's still before the administrative agency. Can itself grant the retirement in the interim? And we don't have that here. This isn't even an interim benefit. It is a benefit that was granted once the board no longer had jurisdiction in this case, had appeal rights still pending to it. So I don't think that a decision here would have any impact on the Department of Insurance. In fact, from other Department of Insurance opinions that I've seen, I think they would agree that if there's a court order, the board certainly can abide by that and would be required to abide by court order. Thank you. I'm going to give you more time. So don't have to rush because we've gone over for the appellee. So you can read. I'll try to keep it short in respect for everybody's time. The with respect to Justice Graham Gamera's question about another statute, it's 40 ILCS 5 slash 1A dash 106, which gives the Illinois Department of Insurance authority to issue those opinions, which is identified at C644 dash 6 C666. And another point I wanted to make it with respect to Mr. Raj's comments is he indicated that the pension board had to pay back the cost of living increases or had to collect back the cost of living increases that were given to Mr. Reed. I think that takes it out of the 40 ILCS 5 4 dash 110 or provision, because if you look at that, when you have the choice between the line of duty disability pension or the retirement pension, they don't get the cost of living. So this was truly a retirement pension that was given. Mr. Raj is correct with respect to that Northbrook case that the issue of the interim decision was raised during a hearing. I was representing the village in that case, and it was agreed to, I think, by the parties or at least raised at that time because the issue of disability was not an issue in that case. The firefighter had been taken off of work by the village because of his condition. The question was whether or not it was duty related or not. So one of two issues, duty relatedness was the only issue pending there, disability was not. With respect to Mr. Moran's comments about the retirement request, the retirement request was early on. I think before the proceedings started, I think in 2017, Mr. Reed intended to retire no matter what happened with respect to these proceedings and gave notice and left the village's employee when he retired and received that retirement pension. I think he received something like $117,000 in back payments for his retirement benefits. So he was well compensated. And with respect to the issue of against the manifest weight of the evidence, a review of the underlying bases for the 2023 decision versus the 2020 decision, looking at the testimony, particularly Dr. Orris, for example, who stated that he did not know the exposures or the decimal levels that Mr. Reed was exposed to in the workplace that was at C949 to 950 and 952. Dr. Sammo, same thing. He testified that he could never associate the exposures in this particular workplace to Mr. Reed's condition. And I think that's significant because this case is different. Ordinarily, we don't have readings, we don't have testing, we don't have anything. And experts are brought in to render an opinion, and they opine that the fire department is a loud place and therefore people have noise-induced hearing loss. If it was as loud as Mr. Rosenbaum said, everybody would have hearing loss in that department, and they don't. And that's an issue. And the reason they don't is because in this case, in this location, with respect to this equipment, when we took readings in 99 and 2017, and there is not one shred of evidence about the change in equipment between when Mr. Reed was there in 2015, 2016, and 2017, there's no evidence of change, the decimal levels were not high enough. So the other point I wanted to make from Dr. Horowitz is in his opinion, he also discounts and disproves the studies that are relied upon by Dr. Oris with respect to his opinion. Dr. Horowitz is the only expert that specializes in ears, nose, and throat. Sammo is an emergency room doctor. Oris is not ears, nose, and throat. And I can't recall Lieberman off the top of my head, but if you look at Dr. Horowitz's opinion, most specifically his supplemental, it says this is not a noise-induced and not diagnostic of noise-induced hearing loss. Unless there's a question, I'm going to end there. Thank you. Just getting back, I had asked you, where is it in the statute about these two tracks, and you pointed me to 110. That's not what 110 says. At least my reading says disability, pension, line of duty. And if you are disabled, you get this choice. You get your line of duty pension is 65% or the retirement pension. But that doesn't say you have to pick a track as to what you're applying for. Is there any other place in the statute that says you either have to go duty, non-duty, or retirement, but you can't have retirement as a back? Other than the IDOI opinion letter, I don't have any other statutory authority. Thank you. I want to thank everyone. Appreciate your briefs. Appreciate your arguments. It's a pleasure to have three lawyers who are well-prepared and knowledgeable about the area. So we appreciate it very much. And from hearing from all three of you, very good job. So you've given us a lot to think about. We'll take on their advisement and have a good afternoon. Thank you very much.